# UNITED STATES DISTRICT COURT

__NORTHERN__ DISTRICT OF __ILLINOIS, EASTERN DIVISION__

UNITED STATES OF AMERICA

v.

MARIO A. CARROLL and
ROBERT E. LOUIS

CRIMINAL COMPLAINT

CASE NUMBER: **MAGISTRATE JUDGE COX**

**07CR 840**

I, __Kelly L. Popovits__, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about __November 8, 2007__ in __Cook__ County, in the __Northern__ District of __Illinois__ defendant(s) did, (Track Statutory Language of Offense)

> devised, intended to devise, and participated in a scheme to defraud or to obtain money and property by means of false or fraudulent pretenses, representations, or promises, and in furtherance of such scheme caused a wire communication in interstate commerce,

in violation of Title __18__ United States Code, Section(s) __1343__.

I further state that I am a __Special Agent with the United States Department of Housing and Urban Development__ (Official Title) and that this complaint is based upon the following facts:

See attached affidavit.

Continued on the attached sheet and made a part hereof: __X__ Yes ___ No

**FILED**
DEC 14 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

_Signature of Complainant_

Sworn to before me and subscribed in my presence,

December 14, 2007                                    at        Chicago, Illinois
Date                                                                       City and State

Susan E. Cox, United States Magistrate Judge
Name & Title of Judicial Officer                            Signature of Judicial Officer

STATE OF ILLINOIS    )
                     )   SS
COUNTY OF COOK       )

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Kelly L. Popovits, being duly sworn depose and state as follows:

1. I am a Special Agent of the United States Department of Housing and Urban Development, Office of the Inspector General ("HUD-OIG") assigned to the Chicago Regional Office. Affiant has been employed by HUD-OIG since June 1999. Since that time, Affiant has been investigating financial crimes including: mail fraud, wire fraud, and bank fraud. Affiant has received training pertaining to investigative techniques regarding financial crimes, the collection and preservation of evidence, and the interviewing of suspects and witnesses.

2. This affidavit is based on Affiant's personal knowledge, as well as information obtained from documents, video and audio footage, other law enforcement officials, and private businesses. This affidavit does not contain all of the information known to law enforcement regarding this investigation, but rather, contains only those facts believed to be necessary to establish probable cause to support a complaint against MARIO A. CARROLL and ROBERT E. LOUIS.

3. As set forth below, Affiant submits that there is probable cause to believe that MARIO A. CARROLL and ROBERT E. LOUIS committed the crime of wire fraud in violation of Title 18, United States Code, Section 1343 in that CARROLL and LOUIS engaged in a scheme to defraud and to obtain money or property by means of false or fraudulent pretenses, representations, or promises, and caused to be transmitted by wire communication in interstate commerce certain writings, signs, and signals for the purpose of executing such scheme. In particular, Affiant submits that there is probable cause to believe that CARROLL and LOUIS engaged in a scheme that involved the fraudulent conveyance of a residence located at 744 North Drake Avenue in Chicago from the

residence's rightful owners, Owner A and B, to CARROLL and then, for the purpose obtaining the proceeds of the sale, purported to sell the property to LOUIS, who was using the stolen identity of Individual A to obtain financing for the purchase.

4. On or about September 11, 2007, Special Agent Mark J. Brandenburg from the United States Secret Service obtained information from the Cook County Recorder of Deeds Office indicating that the property at 744 North Drake Street, Chicago, Illinois, had a quit claim deed recorded in which the property was granted from the owners, Owner A and Owner B, to another individual, MARIO CARROLL. Special Agent Brandenburg also obtained a copy of the quit claim deed for this property, which indicated that CARROLL resided at 911 North Central Avenue, Chicago, Illinois, and signed the quit claim deed before a Notary Public. The document also had the apparent signatures of Owner A and Owner B affixed to it indicating they were releasing their rights to the property as of April 15, 2004.

5. On or about November 15, 2007, the Affiant obtained information from the Stewart Title Company located in Oak Brook, Illinois, in reference to a pending sale of 744 North Drake Street, Chicago, Illinois, to someone using the name of Individual A. Stewart Title Company indicated that Individual A was purportedly buying the property from MARIO CARROLL with the assistance of a mortgage broker, BROKER A, of Credit Banc Plus, 7064 West Belmont Avenue, Chicago, Illinois. Stewart Title Company indicated that Individual A was attempting to secure a loan for $318,250 from Countrywide Financial to finance the purchase of the property.

6. On or about November 25, 2007, the Affiant contacted Owner A at her residence, 744 North Drake Street, Chicago, Illinois. Owner A stated that she owned the property at 744 North Drake Street and that she had never signed a quit claim deed releasing the rights to her residence to

CARROLL. The Affiant provided a copy of the quit claim deed referenced above to Owner A, and Owner A confirmed that she had never signed the quit claim deed. Owner A also stated that Owner B was her now-deceased spouse and, to her knowledge, Owner B had never signed such a document and that the signature reflected on the document did not appear to be that of her now-deceased husband.

7. On or about November 29, 2007, Special Agent Brandenburg spoke to a representative of Countrywide Financial. The representative confirmed that an application had been submitted by a mortgage broker, Credit Banc Plus, to Countrywide Financial in order to obtain financing for the purported purchase of 744 North Drake Street from MARIO CARROLL by a person using the name and identifiers of Individual A.

8. The representative from Countrywide Financial further informed Special Agent Brandenburg that she sent an approval for the loan, along with conditions for final approval from its office in the Northern District of Illinois to the mortgage broker, Credit Banc Plus, via e-mail on November 8, 2007. The representative further stated that numerous other items had been sent or received by Countrywide Financial at its office in the Northern District of Illinois via e-mail in connection with the processing of the loan, these included the following:

    a. The appraisal for the property, the title of the property, bank statements for the buyer, W-2 tax forms, pay stubs, and other documents were sent by Credit Bank Plus to Countrywide via e-mail on November 16, 2007, November 29, 2007, and December 10, 2007;

    b. Various updates related to the processing of the loan conditions were sent by Countrywide Financial to Credit Banc Plus via e-mail on November 29,

2007, December 10, 2007, and December 11, 2007.

    c.    The closing package documents for the loan application process were sent by Countrywide Financial to the title company, Stewart Title, via e-mail on December 11, 2007 and December 12, 2007.

9. The representative explained that all e-mails received and sent by Countrywide Financial are routed through one of Countrywide's three network servers located in Arizona, California, or Texas.

10. Countrywide Financial also provided the investigating agents with the loan documents pertaining to the financing for the purported purchase of 744 North Drake Street, Chicago, Illinois. The documents indicated the birth date and social security number of the purported buyer, Individual A. The loan documents also stated that Individual A resided at 712 N. Austin Boulevard, Oak Park, Illinois.

11. On or about December 3, 2007, after searching various databases available to law enforcement officers, the Affiant identified and met with Individual A at a residence located on South Jeffery Boulevard in Chicago, Illinois. Individual A confirmed that his date of birth and social security number were identical to the ones listed on the loan documents received by Countrywide Financial for the purchase of 744 North Drake Street, Chicago, Illinois. Individual A stated he had not agreed to purchase any property and never applied for the loan in question or had any knowledge of someone using his information to secure a loan. Individual A stated he did not reside at 712 North Austin Boulevard, Oak Park, Illinois, and did not know of anyone residing at the location.

12. On or about December 13, 2007, MARIO A. CARROLL and an individual later identified as ROBERT E. LOUIS appeared at the offices of Stewart Title in Oak Brook, Illinois for

the purpose of closing the financing and sale for the purported purchase of 744 North Drake Avenue property by Individual A from CARROLL. BROKER A was also present for the closing. Unbeknownst to CARROLL and LOUIS, the closing was being monitored and recorded by law enforcement officers, including by the Affiant.

13. During the course of the closing, MARIO A. CARROLL signed various documents representing that he was the owner of the property located at 744 North Drake Avenue. ROBERT E. LOUIS represented himself to be Individual A and, thereafter, signed various documents using the name of Individual A and representing that he was purchasing the property at 744 North Drake Avenue in Chicago.

14. At the end of the closing, law enforcement officers then entered the closing room and placed MARIO CARROLL and ROBERT LOUIS under arrest.

15. Following their arrest, MARIO A. CARROLL and ROBERT E. LOUIS were each advised of their *Miranda* rights. Each waived their rights and agreed to speak to law enforcement officers. CARROLL admitted he did not own the property at 744 North Drake Street, Chicago, Illinois. CARROLL stated that he had been contacted by an individual he knows as "Silk" who drove him to the Stewart Title Company in order to act as the seller of the property and sign the loan documents during the closing. CARROLL stated he was told he would receive ten (10) percent of the proceeds obtained from the check issued to him by the title company upon completion of the closing.

16. ROBERT E. LOUIS told law enforcement officers that he was driven to the Stewart Title Company and was provided with a fake Illinois driver's license which indicated he was Individual A of South Jeffery Street in Chicago, Illinois. LOUIS stated he was promised by an

individual he knows as "Silk" that he would receive fifteen thousand dollars ($15,000) if he acted as the buyer during the transaction and signed the loan documents as "Individual A."

17. Based on the foregoing, I respectfully submit that there is probable cause to believe that MARIO A. CARROLL and ROBERT E. LOUIS engaged in a scheme to defraud and to obtain money or property by means of false or fraudulent pretenses, representations, or promises, and caused to be transmitted by wire, radio, or television communication in interstate or foreign commerce any writings, signs, signals, or pictures for the purpose of executing such scheme, in violation of Title 18, United States Code, Section 1343.

FURTHER AFFIANT SAYETH NOT.

Kelly L. Popovits
Special Agent
U.S. Department of Housing and Urban Development

Subscribed to and signed before me
this 13th day of December 2007

Susan E. Cox
United States Magistrate Judge