**FILED**

JAN – 8 2008

~~JAN 8 2008~~

MICHAEL W. DOBBINS

**CLERK. U.S. DISTRICT COURT**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )

vs. )

MARIO A. CARROLL and )
ROBERT E. LOUIS )

**JUDGE GOTTSCHALL**

No.    07 CR 840

Violation: Title 18, United States
Code, Section 1344

**MAGISTRATE JUDGE COX**

COUNT ONE

The SPECIAL AUGUST 2006-1 GRAND JURY charges:

1.    At times material to the indictment:

a.    Countrywide Bank, FSB ("Countrywide Bank") was a financial institution with deposits insured by the Federal Deposit Insurance Corporation. Countrywide Home Loans, Inc. ("Countrywide Home Loans") acted as the agent for Countrywide Bank in connection with the origination of certain mortgage loans and had offices located throughout the United States, including in the Northern District of Illinois.

b.    Individuals A and B were the owners of the residence located at 744 North Drake Street in Chicago, Illinois (hereinafter "the Drake Street residence"). Individuals A and B possessed full equity in the Drake Street residence without any mortgages or liens encumbering the residence.

2.    From in or about August 2007, and continuing to in or about December 2007, at Oak Brook, in the Northern District of Illinois, and elsewhere,

MARIO A. CARROLL and
ROBERT E. LOUIS,

defendants herein, and others known and unknown to the Grand Jury, knowingly devised and participated in a scheme to defraud and to obtain money and funds owned by and under the custody

and control of Countrywide Bank, by means of materially false and fraudulent pretenses, and representations, which scheme is further described in the following paragraphs.

3.      It was part of the scheme that, in or about August 2007, without the knowledge or authorization of Individuals A and B, persons known and unknown to the Grand Jury recorded a quit claim deed bearing the forged signatures of Individuals A and B with the Cook County Recorder of Deeds purporting to reflect the transfer of Individuals A and B's ownership interest in the Drake Street residence to defendant CARROLL.

4.      It was further part of the scheme that, in or about October 2007, persons known and unknown to the Grand Jury caused the submission of an application for a mortgage loan to Countrywide Home Loans, which was acting in its capacity as an agent for Countrywide Bank. The application falsely represented that Individual C was seeking financing in connection with his purported purchase of the Drake Street residence from defendant CARROLL1 when, in fact, Individual C had no knowledge of the application, Individual C had not agreed to purchase the Drake Street residence, and defendant CARROLL did not have any ownership interest in the Drake Street residence and did not otherwise have authorization to transfer title to the residence.

5.      It was further part of the scheme that, in or about October 2007, in connection with Individual C's purported loan application to Countrywide Home Loans, persons known and unknown to the Grand Jury caused the submission of a fictitious real estate contract reflecting the sale of the Drake Street residence by defendant CARROLL to Individual C for $335,000 when, in fact, defendant CARROLL did not possess an ownership interest in the property or otherwise have authority to transfer title to the Drake Street residence and Individual C had not agreed to purchase

the Drake Street residence.

6.    It was further part of the scheme that, in or about October 2007, in connection with Individual C's purported loan application to Countrywide Homes Loans, persons known and unknown to the Grand Jury caused the submission of a fictitious check stub reflecting payment to defendant CARROLL in the amount of $16,750 that purported to represent the payment of earnest money by Individual C to defendant CARROLL in connection with the purchase of the Drake Street residence when, in fact, no such payment had been made by Individual C, Individual C had not agreed to purchase the Drake Street residence, and defendant CARROLL did not possess an ownership interest in the residence or otherwise have authority to transfer title to the Drake Street residence.

7.    It was further part of the scheme that defendant CARROLL agreed to falsely pose as the owner of the Drake Street residence and to attend the closing in connection with the fraudulent sale of the residence in return for a promise to receive ten percent of the anticipated proceeds from the sale. As defendant CARROLL was well aware, he was not the actual owner of the Drake Street residence and was not otherwise authorized to transfer title to the residence or receive the proceeds from any sale of the residence.

8.    It was further part of the scheme that defendant LOUIS agreed to falsely pose as Individual C in return for the promise to receive $15,000 from the anticipated proceeds of the sale of the Drake Street residence.

9.    It was further part of the scheme that, on or about December 13, 2007, for the purpose of fraudulently obtaining the proceeds from the purported sale of the Drake Street residence and for

-3-

the purpose of fruadulently portraying that he had an ownership interest in the residence and the ability to convey title to the residence, defendant CARROLL appeared at the office of Stewart Title Company in Oak Brook, Illinois for the closing in connection with the purported sale of the Drake Street residence to Individual A and falsely represented himself to be the owner of the Drake Street residence. As defendant CARROLL was well aware, he was not actual owner of the Drake Street residence and was not otherwise authorized to convey title or a security interest in the Drake Street residence.

10.     It was further part of the scheme that, on or about December 13, 2007, defendant LOUIS appeared at the offices of Stewart Title Company in Oak Brook, Illinois for the closing in connection with the purported sale of the Drake Street residence fraudulently posing as the buyer, Individual C. During the ensuing closing, defendant LOUIS signed various documents falsely representing that he was Individual C and that he was purchasing the Drake Street residence. Defendant LOUIS also presented a fictitious Illinois Driver's License bearing the name and personal information of Individual C, but depicting a photograph of defendant LOUIS. As defendant LOUIS was well aware, he was not Individual C, he was not purchasing the Drake Street residence, and defendant CARROLL did not have authority to convey a security interest in the Drake Street residence.

11.     It was further a part of the scheme that defendants CARROLL and LOUIS and their co-schemers concealed, misrepresented, and hid and caused to be concealed, misrepresented, and hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

12.     On December 13, 2007, at Oak Brook, in the Northern District of Illinois, Eastern

Division,

MARIO A. CARROLL and<br>ROBERT E. LOUIS

defendants herein, knowingly executed and attempted to execute the above-described scheme to

defraud Countrywide Bank by appearing at the Stewart Title Company in Oak Brook, Illinois for the

closing of defendant CARROLL's purported sale of the Drake Street residence to defendant LOUIS

posing as Individual C and attempting to cause Countrywide Bank to provide approximately

$304,131 in funds to defendant CARROLL in connection with the purported sale of the Drake Street

residence;

In violation of Title 18, United States Code, Section 1344.

A TRUE BILL:

_____

FOREPERSON

_____

UNITED STATES ATTORNEY